AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California



LODGED
CLERK, U.S. DISTRICT COURT
8/22/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

United States of America

v.

ANGEL CAMPO RUBIO,

Defendant

Case No.  2:24-MJ-05068-DUTY

FILED
CLERK, U.S. DISTRICT COURT
August 22, 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ch_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 18, 2024, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Alexander Roberts
Complainant's signature

Alexander Roberts, Task Force Officer, Federal Bureau of Investigation
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: August 22, 2024

Judge's signature

City and state: Los Angeles, California    Hon. Brianna Fuller Mircheff, U.S. Magistrate Judge
Printed name and title

AUSA: Kenneth R. Carbajal, x3172

**AFFIDAVIT**

I, Alexander Roberts, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Angel Campo RUBIO ("RUBIO") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

## II. BACKGROUND OF AFFIANT

3. I am a Police Officer with the Long Beach Police Department ("LBPD") and have been so since December of 2014. Additionally, I am a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") and have been so since 2020. I am currently assigned as a TFO to the Los Angeles Field Division Long Beach Resident Agency, which is responsible for

investigating violent crimes within the Long Beach Resident Agency's area of responsibility.

4.   I have received formal training at the Long Beach Police Department Academy. This training included segments on conducting criminal investigations, narcotics identification, organized crime, and other law enforcement topics. Additionally, I am a court qualified gang expert and narcotics expert.

5.   During my time as a TFO with the FBI, I have participated in investigations relating to firearms trafficking, drug trafficking, crimes against children, kidnapping, extortion, criminal threats, bank robberies, Hobbs Act robberies, and other violent crimes.  I have participated in many aspects of criminal investigations, including, but not limited to, reviewing evidence, the analysis of pen and trap and trace records, consensually monitored telephone calls, conducting physical and electronic surveillance, working with informants, and the execution of search and arrest warrants.

### III.  SUMMARY OF PROBABLE CAUSE

6.   On August 18th, 2024, LBPD Patrol Officers conducted a traffic stop of a car in Long Beach for a violation of California Vehicle Code 26708(a)(1) based on window tints on both its front driver and passenger side windows. RUBIO was in the passenger's front seat. During an initial pat down of RUBIO for weapons, an officer located a loaded semi-automatic Glock Model 19 bearing serial number BGGA669 in RUBIO's front waistband (the "Glock"). RUBIO told the officer, "you are going to have to kill me," and then pushed the officer. Officers were

able to restrain RUBIO and handcuff him. During a secondary pat down of RUBIO, officers discovered a firearm in RUBIO's waistband. Officers later determined the firearm to be a loaded unserialized sub-compact semi-automatic Polymer 80 handgun (the "Polymer-80"). An FBI expert later determined that the Glock and the twenty-five rounds of ammunition RUBIO possessed had been manufactured outside of California.

7.  RUBIO has several felony convictions which prohibit him from possessing a firearm. During a post arrest interview, RUBIO stated that both of the firearms belonged to him and that he purchased the firearms recently. He further stated he resisted because he would rather "die than go back to prison."

## IV. STATEMENT OF PROBABLE CAUSE

8.  Based on my review of law enforcement reports, conversations with other law enforcement agents, review of body worn camera footage, and my own knowledge of the investigation, I am aware of the following:

### A.  Officers Conduct A Traffic Stop At 1400 Alamitos Avenue, Long Beach, California

9.  On August 18th, 2024, at approximately 6:36 p.m. LBPD Patrol Officers T. Preuss and C. Yuriar were working uniformed patrol in a marked black and white vehicle when they conducted a traffic stop of a white Kia Sorento bearing a California license plate ending in 090 (the "Kia") at the intersection of Alamitos Avenue and New York Street in the City of Long Beach, California.

10. Officers conducted a records check and determined that the Kia was registered to M.C. Officers saw that the vehicle had heavily tinted front driver and passenger side windows in violation of California Vehicle Code 26708(a)(1). The windows were dark enough that the officers could not see into the vehicle and see the occupants.

11. Officers conducted a traffic stop and approached the Kia. Officer Preuss obtained the driver's (M.C.) driver's license while Officer Yuriar asked for the identifying information of the front passenger, RUBIO. RUBIO provided officers with his name ("Angel Rubio") but would not provide his date of birth. Officer Preuss and Officer Yuriar returned to their police vehicle and conducted a records check of both driver M.C. and RUBIO.

12. While conducting a records check of the name "Angel Rubio," in his patrol vehicle, Officer Yuriar discovered that the name returned to several individuals with active arrest warrants. Officer Yuriar returned to the Kia to verify RUBIO's identity.

13. Upon returning to the Kia, Officer Yuriar advised RUBIO that he conducted a records check of RUBIO's name and found that the name returned to multiple warrants. Officer Yuriar directed RUBIO to step out of the Kia and conducted a pat down of RUBIO's person.

14. Officer Yuriar felt a firearm, which officers later determined was the Glock, in RUBIO's front waistband. Officer Yuriar removed the firearm from RUBIO's waistband and placed the

firearm in his back pocket and instructed RUBIO not to move. Officers later observed that the Glock was loaded with eight rounds of assorted ammunition, namely: (1) one round of Giulio Fiocchi 9mm Luger caliber ammunition; (2) three rounds of Federal Cartridge Co 9mm Luger caliber ammunition; (3) two rounds of Poongsan 9mm Luger caliber ammunition; (4) one round of Ammo Inc 9mm Luger caliber ammunition; and (5) one round of Companhia Brasileria De Cartuchos 9mm Luger caliber ammunition.

15. While standing outside the Kia, Officer Yuriar was holding onto RUBIO's hands and felt him begin to tense his muscles as if to try to break the control hold that Officer Yuriar had him in. Officer Yuriar advised RUBIO not to make any movements or attempt to fight him. RUBIO then stated, "you are going to have to kill me." RUBIO then moved his body forward and attempted to push away from Officer Yuriar. Officer Yuriar, together with assisting officers, was able to restrain RUBIO and handcuff him.

16. Once RUBIO was restrained, officers conducted a secondary pat down and found a firearm in RUBIO's right front waistband, which officers later determined to be the Polymer-80. Officers subsequently arrested RUBIO and seated him in a patrol vehicle. Officers later observed that the Polymer-80 was loaded with 17 rounds of assorted ammunition, namely: (1) 12 rounds of Federal Cartridge Co 9mm Luger caliber ammunition; (2) one round of Winchester 9mm Luger caliber ammunition; (3) two rounds of Norma 9mm Luger caliber ammunition; (4) one round of CCI Blazer

9mm Luger caliber ammunition; and (5) one round of Giulio Fiocchi 9mm Luger caliber ammunition.

### B. RUBIO Claims Ownership of the Firearms

17. Officer Yuriar advised RUBIO of his Miranda Rights. After stating he understood his rights, RUBIO stated that both of the firearms belonged to him. He said he purchased the Polymer-80 two days prior to the traffic stop for $400. RUBIO said that he found the Glock one day prior to the traffic stop. RUBIO would not disclose where he obtained the ammunition for the firearms but said that the firearms were loaded. Additionally, RUBIO said he was aware that he was prohibited from possessing firearms. RUBIO said he carried a firearm because he was from the "East Side," and because he had tattoos on his face.

18. RUBIO also said he would rather die than go back to prison, which was why he fought Officer Yuriar. RUBIO said he would have shot Officer Yuriar if there weren't other people in the car. RUBIO admitted to being a member of the East Side Longo criminal street gang with the moniker of "Lil-Manos."

### C. RUBIO Is a Convicted Felon

19. I reviewed RUBIO's criminal history and determined he has at least eight felony convictions:

    a. On or about July 13, 2018, RUBIO was convicted of possessing narcotics in prison, in violation of California Penal Code Section 4573.8, in case number XCNBA45606901, in the State of California, County of Los Angeles.

      b.    On or about March 7, 2019, RUBIO was convicted of possession of a dirk/dagger, in violation of California Penal Code Section 21310, in case number XCNBA46627701, in the State of California, County of Los Angeles.

      c.    On or about December 3, 2019, RUBIO was convicted of possession/manufacturing a weapon in a penal institution, in violation of California Penal Code Section 4502(a), in case number XNBA47031101, in the State of California, County of Los Angeles.

      d.    On or about February 25, 2019, RUBIO was convicted of obstructing/resisting an officer, in violation of California Penal Code Section 69, in case number XCNBA46993501, in the State of California, County of Los Angeles.

      e.    On or about October 29, 2019, RUBIO was convicted of assault with a deadly weapon with a firearm, in violation of California Penal Code Section 245(a)(2), in case number XSONA10302104, in the State of California, County of Los Angeles.

      f.    On or about November 29, 2020, RUBIO was convicted of assault with a deadly weapon, in violation of California Penal Code Section 245(a)(4), in case number XCNBA48780102, in the State of California, County of Los Angeles.

      g.    On or about June 12, 2020, RUBIO was convicted of assault with a deadly weapon on a peace officer, in violation California Penal Code Section 245(c), in case number

XCNBA47712002, in the State of California, County of Los Angeles.

    h.  On or about December 27, 2019, RUBIO was convicted of battery with injury, in violation of California Penal Code Section 243(C)(2), in case number LASPA09274802, in the State of California, County of Los Angeles.

**D.  Interstate Nexus**

20. On August 20, 2024, FBI Special Agent ("SA") and Interstate Nexus Expert James Yun examined the Glock that RUBIO possessed and determined that the firearm was manufactured in Germany and therefore had to travel in interstate commerce to get to California.

21. On August 20, 2024, SA Yun also examined the twenty-five rounds of ammunition found in the Glock and Polymer-80 and determined that all of the rounds of ammunition were manufactured outside of California and therefore had to travel in interstate commerce to get to California.

///

///

///

## V. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that RUBIO violated 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 22nd day of August, 2024.

_____
HONORABLE BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE