O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 2:24-CR-00542-MEMF-1 |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS [ECF NO. 23]** |
| v. | |
| ANGEL CAMPO RUBIO, | |
| Defendant. | |

Before the Court is a Motion to Suppress filed by Defendant Angel Campo Rubio. ECF No. 23. For the reasons stated herein, the Court hereby GRANTS the Motion to Suppress.

/ / /

/ / /

**I.  Background**

   **A.  Factual Background**[1]

On August 18, 2024, Officer Christopher Yuriar and Officer Timothy Preuss (the "Officers") from the Long Beach Police Department ("LBPD") stopped a Kia Sorrento for driving with tinted windows. ECF No. 23-2 ("LBPD Rpt.") at 296. Defendant Angel Campo Rubio was the front seat passenger. *See* ECF No. 20 ("Yuriar BC"). In response to Yuriar's questioning, Rubio gave his first and last name to Yuriar. *Id.* at 1:48-2:05. The Officers then returned to the patrol car and Yuriar searched for warrants matching Rubio and the driver's names. *Id.* at 2:30-7:00. Yuriar first typed in Rubio's name, then conducted a search on the driver, and then returned to searching warrants for Rubio. *Id*. Yuriar found three misdemeanor warrants matching the name Angel Rubio, all of which stated that the individual should not be arrested or booked based on the warrant. ECF No. 23-6. Yuriar then stated to Preuss that he believed it was their "due diligence" to verify whether Rubio matched any of the warrants. Yuriar BC at 6:30-6:40. The Officers then returned to the vehicle, where Yuriar told Rubio that Rubio needed to get out of the car to verify whether he had a warrant out on him. *Id.* at 7:00-7:30. Rubio denied having a warrant and offered his identification to Yuriar, but Yuriar ordered him to get out of the vehicle. *Id.* After Rubio stepped out of the vehicle and gave Yuriar his identification, Yuriar frisked Rubio and found two firearms on his person. *Id.*

   **B.  Procedural History**

On September 11, 2024, Rubio was indicted as a felon in possession of a firearm. ECF No. 10. On November 13, 2024, Rubio moved to suppress all evidence obtained as a result of the traffic stop and resulting search of his person on August 18, 2024. ECF No. 23 (the "Motion"). On November 27, 2024, the government filed its opposition. ECF No. 25 ("Opposition"). On December 5, Rubio filed his reply. ECF No. 26 ("Reply"). The parties waived an evidentiary hearing (ECF Nos. 39, 41) and the Court heard oral argument on the matter on January 15, 2024.

/ / /

/ / /

---

[1] The Court's summary here is gathered from facts and evidence submitted on the record.

2

## II. Applicable Law

The Fourth Amendment protects people and their effects from unreasonable searches and seizures. U.S. Const. amend. IV. With limited exceptions, a search is unreasonable when law enforcement agents search a person or their possessions without a judicial warrant or individualized suspicion of wrongdoing. *United States v. McCarty*, 648 F.3d 820, 830 (9th Cir. 2011), *as amended* (Sept. 9, 2011). As applied in Fourth Amendment cases, the exclusionary rule generally requires courts to suppress any evidence obtained from an illegal search. *United States v. Ngumezi*, 980 F.3d 1285, 1290 (9th Cir. 2020). "The government bears the burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement." *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017). The controlling standard of proof is by a preponderance of the evidence. *United States v. Matlock*, 94 S. Ct. 988, 996 n.14 (1974).

## III. Discussion

For the reasons discussed below, the Court finds that while the Officers had reasonable suspicion to stop the vehicle, the stop was unconstitutionally prolonged and Yuriar's frisk of Rubio was regardless unconstitutional. Accordingly, the Court GRANTS the Motion.

### A. There Was Reasonable Suspicion to Stop the Vehicle

Rubio argues that the initial stop of the vehicle was not based on reasonable suspicion. In particular, Rubio notes that the passenger in the backseat has submitted a declaration that the two front windows were rolled down.[2] ECF No. 23-8 ("Barajas Decl.") ¶ 6. Moreover, Rubio contends that based on the positions of the vehicle and the police car, it would not have been possible for the Officers to have seen the front windows.[3] Motion at 9. Although it does not appear likely that the Officers saw the driver side window as the window was opposite to their field of vision prior to the stop, the Court finds it likely that the Officers did see the passenger side window as that would have

---

[2] Under California law, the restrictions on excessive tinting of windows does not apply to "side windows that are to the rear of the driver." Cal. Veh. Code § 26708(b)(4).

[3] The Court notes that in the police report of the incident, Yuriar represented that he saw "extremely dark window tint" in violation of the law on both "the front driver and front passenger side windows," but in the declaration submitted in support of the Opposition, only states that he saw the front window on the passenger side. *See* LBPD Rpt. at 5; ECF No. 25-1 ("Yuriar Decl.") ¶ 4.

3

been directly facing them when the car was turning. Moreover, when the vehicle was eventually stopped, although the driver side window was completely rolled down, the passenger-side window, where Rubio was sitting, was only partially rolled down.[4] While Rubio contends that the car windows were objectively not as dark as the Officers claimed, the Court notes that the windows are obviously tinted, such that at a distance, it may not have been plausibly clear to the Officers whether the tint was excessive or not. Even if it became apparent to the Officers that the windows were not *excessively* tinted until *after* they stopped the car, this does not defeat reasonable suspicion to stop the car in the first place.

Accordingly, the Court finds there was reasonable suspicion to make the initial stop.

### B. The Officers Unconstitutionally Prolonged the Stop

The Court finds that the Officers' search into warrants and attempt to match Rubio to a warrant unconstitutionally prolonged the stop without sufficient reasonable suspicion. Pursuant to the Supreme Court's holding in *Rodriguez v. United States*, an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," but "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." 575 U.S. 348, 355 (2015). In *Rodriguez*, the extension of the stop was only by "seven to eight minutes" to conduct a dog sniff unrelated to the original traffic stop. *Id.* at 353. However, the Supreme Court emphasized that it is not how fast police officers can complete the tasks, but rather whether the time is added to the stop. *Id.* at 357.[5] Here, Rubio contends that the warrant search on

---

[4] At the hearing, defense counsel contended that as there were only two competing declarations on this factual issue, the government had not met their burden. However, the video footage is also in the record which the Court has considered and finds supports by a preponderance of the evidence that Yuriar had at least partially seen the window in question.

[5] Therefore, it is immaterial the precise amount of time the Officers spent investigating Rubio, as it is clear that at least some of this investigation was not done co-extensively with the tasks related to the traffic stop. To the extent that the government is arguing that the length of time spent investigating Rubio was minimal such that it was a "negligibly burdensome precaution" that an officer should be allowed to take, the Court notes that such "precautions" are only constitutional where they are related to the stop in question. *See Rodriguez*, 135 U.S. at 356 (noting that while an officer "may need to take certain negligibly burdensome precautions in order to complete his mission safely," "[o]n-scene investigation into other crimes, however, detours from that mission" and "[s]o too do safety precautions taken in order to facilitate such detours"); *see also U.S. v. Evans*, 786 F.3d 779, 787 (9th Cir. 2015) ("Such unrelated 'precautions,' which do not stem from the mission of the stop itself, [] cannot justify extending a traffic stop.").

the driver was conducted in less than a minute, and it was at this point that the "mission" of the traffic stop was completed. Motion at 13. At the point that the warrant search on the driver was completed, the Officers would have known whether or not the tint on the windows was excessive, and whether or not the driver was legally and safely able to operate the vehicle. The Court finds that this completes any possible mission of the traffic stop. *See Rodriguez*, 575 U.S. at 354 (explaining that the mission of a traffic-stop is "to address the traffic violation that warranted the stop [] and attend to related safety concerns").

Moreover, although checking whether outstanding warrants exist against the driver is considered an inquiry ordinary to a traffic stop (*id.* at 355), here, Yuriar conducted a warrant search on Rubio, who was merely a passenger.[6] While it makes sense that checking the status of the driver "serve[s] the same objective as enforcement of the traffic code," this logic does not carry over to passengers. *Id.* (noting that a "warrant check makes it possible to determine whether *the apparent traffic violater* is wanted for one or more previous traffic offenses") (emphasis added); *see also U.S. v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019) ("The identity of a passenger, however, will ordinarily have no relation to a driver's safe operation of a vehicle.").[7] Therefore, at the time that Yuriar turned back to conducting a warrant search on Rubio, the Officers had already addressed both the traffic violation, and attended to any related safety concerns. To the extent that there were additional steps to be taken with addressing the traffic violation, they were not completed only because the Officers became focused on investigating Rubio. *See Landeros*, 913 F.3d at 866 (noting that it does not matter if the unrelated check is done before or after a warning is issued, because what "matter[s] was the added time, not at what point, in the chronology of the stop, that time was added").

---

[6] Although there appear to be out-of-circuit cases holding that such searches into passengers are constitutional, the government cites no binding authority on this point. The government only cites *U.S. v. Hylton*, where the Ninth Circuit held that a criminal history check of the sole person in the vehicle was justified. 30 F.4th 842, 847 (9th Cir. 2022). There was no passenger at issue in *Hylton*.

[7] At least one district court post-*Rodriguez* has held that a stop was "unreasonably prolonged . . . by conducting a record check" of a passenger. *U.S. v. Maffei*, 417 F. Supp. 3d 1212, 1221 (N.D. Cal. 2019).

According to Yuriar, there was a safety concern posed by Rubio because he had noticed that Rubio had (1) tattoos saying "ESL," "Playboy Bunny," and "FUCK LBPD," and (2) there was a red bandana located near Rubio on the center console of the vehicle. Yuriar Decl. ¶ 8. Yuriar believed that ESL and Playboy Bunny were gang-affiliated tattoos, and given his experience with the gang, believed that there could be a safety concern. *Id.* However, as the Ninth Circuit noted in *Landeros*, further investigating the passenger "would not have made the officers any safer." 913 F.3d at 868. Rather, "[e]xtending the stop, and thereby prolonging the officers' exposure to [the defendant], was, if anything, 'inversely related to officer safety.'" *Id.* To the extent that Yuriar believed it necessary to further investigate Rubio independent of the traffic stop because of his affiliation with a gang, this required independent reasonable suspicion. *See Evans*, 786 F.3d at 787 ("We recognize that an officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion."). The Court finds that the existence of tattoos and a red banana on its own do not form a basis for reasonable suspicion of any crime. Accordingly, the further investigation into Rubio was outside the scope of the traffic stop, and it undisputedly added time to the stop. Thus, the Court finds that the stop was unconstitutionally prolonged.[8]

   **C.**  **The Officers Lacked Reasonable Suspicion Rubio was Armed and Dangerous**

Even if the Officers had reasonable suspicion that Rubio had an outstanding warrant, the ensuing pat down must have been justified by reasonable suspicion that Rubio was armed and dangerous. "To establish reasonable suspicion a suspect is armed and dangerous, thereby justifying a frisk, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Thomas v. Dillard*, 818 F.3d 864, 876 (9th Cir. 2016). "A mere inchoate and unparticularized suspicion or hunch that a person is armed and dangerous does not establish reasonable suspicion." *Id.* (internal quotations and citations omitted). "Even in high crime areas, where the possibility that any given individual armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be

---

[8] The Court therefore need not address whether the Officers had reasonable suspicion that the warrants found were for Rubio.

conducted." *Id.* The Court finds that the further frisk of Rubio was not justified, as there was insufficient reasonable suspicion to believe that Rubio was armed and dangerous.

Here, it appears Yuriar believed Rubio to be armed and dangerous because: (1) Rubio was "uncooperative initially," (2) Yuriar suspected Rubio to have active warrants, (3) Yuriar suspected that Rubio was an active gang member, and (4) Yuriar suspected Rubio "may" have been in possession of a firearm because he had baggy clothing. Yuriar Decl. ¶ 17; LBPD Rpt. at 6. However, these beliefs do not add up to specific and articulable facts that support reasonable suspicion, even if taken together. First, the Court notes that Rubio did give Yuriar his name initially, although he refused to give further information as was his right. Moreover, upon coming back to talk to him about verifying the warrants, Rubio spoke calmly in response to Yuriar and attempted to give him further information to help confirm that the warrants were not for him. The fact that some of Rubio's tattoos may have been related to gangs is insufficient to create individualized suspicion. *See U.S. v. Sigmond-Ballesteros*, 285 F.3d 1117, 1121 (9th Cir. 2002) ("[R]easonable suspicion may not be based on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped."). There was also no reasonable suspicion that Rubio was armed just because he was wearing baggy clothes—Yuriar does not state that he saw any bulge or indication there was a weapon under the clothes, and the "baggy" clothes themselves do not justify reasonable suspicion that an individual is armed. *See Job*, 871 F.3d at 861. Considering the totality of the circumstances here, the Court does not find that the facts identified by Yuriar support reasonable suspicion that Rubio was armed and dangerous.

### D. Exclusion of Evidence is Warranted

At the hearing, the government acknowledged that exclusion would be warranted if the Court made a finding that the search was unconstitutional and withdrew the arguments made in its briefing to the contrary. Accordingly, the Court finds exclusion the proper remedy here.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS the Motion to Suppress.

The parties are ORDERED to meet and confer regarding further proceedings, including the pending Motion to Dismiss, any pretrial filings, and the Final Pretrial Conference currently on

calendar. The parties are ORDERED to file a Joint Status Report by January 16, 2025, regarding what further proceedings, if any, are to take place.

IT IS SO ORDERED.

Dated: January 15, 2025

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge